**[Cite as *State v. Faulkner*, 2023-Ohio-971.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-22-1108

      Appellee                                       Trial Court No.  CR0202101967

v.

Jaquan Faulkner                                     **DECISION AND JUDGMENT**

      Appellant                                      Decided:  March 24, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant, Jaquan Faulkner, appeals the March 16, 2022 judgment of the

Lucas County Court of Common Pleas convicting him of having a weapon while under

disability.  For the following reasons, we affirm the trial court's judgment.

## A. Facts and Procedural Background

{¶ 2} On July 1, 2021, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A) and (C), a first-degree felony (count 1); kidnapping in violation of R.C. 2905.01(A)(2) and (C), a first-degree felony (count 2); carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and (F)(1), a fourth-degree felony (count 3); receiving stolen property in violation of R.C. 2913.51(A) and (C), a fourth-degree felony (count 4); and having a weapon while under disability in violation of R.C. 2923.13(A)(2) and (B), a third-degree felony (count 5). Counts 1 and 2 both included a specification that appellant displayed, brandished, indicated possession of, or used a firearm in the commission of the offense pursuant to R,C, 2941.145(A), (B), (C), and (F), and that appellant was a repeat violent offender pursuant to R.C. 2941.149.

{¶ 3} This appeal pertains to counts 3 and 5. Those charges arose from an incident that occurred on June 22, 2021, in Toledo, Lucas County, Ohio, in which appellant was arrested on an outstanding warrant. During the arrest, the Toledo Police Department officers discovered appellant was in possession of a concealed weapon. Appellant appeared for arraignment on July 13, 2021. He was determined to be indigent, was appointed counsel, and entered a not guilty plea to all counts.

{¶ 4} On November 20, 2021, appellant filed a motion to sever the counts in the indictment for separate trials pursuant to Crim.R. 14. Appellant argued that the state's anticipated evidence in support of counts 1 and 2 would unfairly prejudice the jury's deliberation on counts 3, 4, and 5.

2.

{¶ 5} The parties appeared for trial on December 6, 2021. At that time, the state indicated that it had no objection to appellant's motion to sever counts 1 and 2 from the rest for separate trials. The state then made its own motion to dismiss count 4. The trial court granted appellant's motion to sever the counts and the state's motion to dismiss. Following resolution of these preliminary motions, appellant and the state entered into a stipulation that "[appellant] has a prior qualifying violent felony offense which precludes him from owning or possessing a firearm in the state of Ohio." The parties then completed their jury selection with the trial on the now-severed counts 3 and 5 to resume the following day.

{¶ 6} At trial, the parties elicited the following testimony and related evidence:

**Testimony of Detective Tyler Miller, Toledo Police Department**

{¶ 7} At the time of appellant's trial, Detective Tyler Miller had been employed by the Toledo Police Department in Toledo, Ohio for seven years. On June 22, 2021, Detective Miller was assigned to field operations. His duties generally included patrolling neighborhoods, responding to calls for service, and traffic stops. His then-partner, Officer Brooke Janowiecki, was operating a marked Toledo Police patrol car in furtherance of those duties. During their patrol, they were approached by an unnamed individual. That individual indicated that he was aware that someone named "Jake" had a warrant for their arrest and that he was "around the corner." Detective Miller understood "Jake" to be appellant and entered his name into the vehicle's mobile

3.

computer to verify whether the arrest warrant remained active. The search revealed an active warrant that authorized appellant's arrest.

{¶ 8} Detective Miller and Officer Janowiecki then proceeded to the area where appellant had been seen. Detective Miller observed appellant standing among a group of individuals. He then exited the vehicle and instructed appellant to move toward him. Appellant followed the instruction and was placed under arrest by Officer Janowiecki. During the arrest, Officer Janowiecki "patted down" appellant to "make sure there [were] no weapons or no dangerous objects" within appellant's reach. The search resulted in the discovery of a firearm concealed in appellant's waistband as well as cocaine and a scale. Detective Miller further testified that he was unable to see the firearm until it was discovered during the arrest but did see it being removed from appellant's waistband during the search. After the firearm was removed, it was unloaded and placed into an evidence bag. Detective Miller did not recall where on appellant's person that Officer Janowiecki discovered the cocaine and scale.

{¶ 9} Detective Miller then testified that after collecting the firearm, he contacted the Toledo Police Department detective bureau to determine if the firearm was stolen. After being informed that it was not, he contacted Detective Thomas in the Toledo gang task force because, as a patrol officer, he was not authorized to process any charges that constituted a felony.

{¶ 10} At the time of appellant's arrest, the vehicle Officer Janowiecki operated was equipped with a dashboard camera. Additionally, both Detective Miller and Officer

4.

Janowiecki were wearing body cameras. However, their initial interaction with appellant was not recorded. Detective Miller explained that both the dashboard and body cameras begin recording either when the lights and sirens were engaged or if they had manually started the recording. He testified that he and Officer Janowiecki did not engage the lights and sirens because they wanted to be "more stealthy" when they approached appellant. It was not until after appellant had been searched that Detective Miller manually engaged his body camera to record the remainder of appellant's arrest.

{¶ 11} During his testimony, the state provided Detective Miller with an evidence bag that he identified as the one in which the firearm was placed. He testified that the bag and its contents were identifiable through the evidence tag that he and Officer Janowiecki completed at the time of appellant's arrest. He then confirmed that the firearm in the evidence bag was the same firearm that was removed from appellant's waistband during his arrest. The state then provided appellant with another evidence bag containing ammunition. Detective Miller identified the evidence bag as containing the ammunition that was in the firearm recovered from appellant during his arrest through the evidence tag completed at that time. Both the firearm and the ammunition were then admitted as evidence without objection from appellant.

{¶ 12} On cross-examination, Detective Miller testified that he did not know the name of the individual that alerted him to appellant's presence. He also stated that he did not see the firearm prior to it being removed from appellant's waistband. Detective

5.

Miller concluded his testimony by noting that he could not recall any other items discovered on appellant's person during Officer Janowiecki's search.

**Testimony of David Cogan, Toledo Police Forensic Laboratory**

{¶ 13} David Cogan is the laboratory administrator of the Toledo Police Department's Forensic Laboratory. He identifies his primary duty in that role as conducting "firearms examination." This process involves determining if a firearm "functions and [is] able to expel a projectile when it's fired" by firing the weapon into a cotton box. This process allows the laboratory to conclude whether the firearm is operable.

{¶ 14} During his testimony, the state asked Mr. Cogan to identify the firearm previously admitted into evidence during Detective Miller's testimony. Mr. Cogan identified it as a firearm he was asked to evaluate in conjunction with appellant's prosecution. He noted that the firearm was in substantially similar condition at the time of trial as it was when he tested it. Mr. Cogan's testing determined that the firearm was operable. Appellant declined to cross-examine Mr. Cogan.

**<u>Stipulation</u>**

{¶ 15} At the conclusion of Mr. Cogan's testimony, the trial court informed the jury that the parties had stipulated to the following fact:

[Appellant] has a prior qualifying violent felony offense which precludes

him from owning or possessing a firearm in the State of Ohio.

6.

The trial court then instructed the jury that this stipulation could only be considered for "the limited purpose of proving the defendant's disability as it relates to the charge of having a weapon while under disability and must not be considered for any other purpose."

### Appellant's Crim.R. 29 Motion

{¶ 16} After recitation of the stipulation, the state rested its case-in-chief. Appellant then made an oral Crim.R. 29 motion for acquittal. Appellant offered no specific argument in support of his motion. The state made no argument in response. The trial court denied appellant's motion.

### Appellant's Renewed Crim.R. 29 Motion, Jury Verdict, and Sentencing

{¶ 17} Appellant rested his case-in-chief without calling any witnesses. Appellant then renewed his Crim.R. 29 motion for judgment of acquittal, again without providing any specific argument. The trial court again denied appellant's motion. The parties then proceeded to closing arguments followed by submission of the case to the jury. Following its deliberation, the jury found appellant guilty on count 3—carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and (F)(1)—and count 5—having a weapon while under disability in violation of R.C. 2923.13(A)(2) and (B).

{¶ 18} Following the guilty verdicts, the trial court set counts 1 and 2 for trial to begin on February 7, 2022. Following a continuance, the parties appeared for trial on March 1, 2022. Rather than proceeding to trial, the state made an oral motion to dismiss the remaining charges. The trial court granted the state's motion. It then ordered

7.

appellant to participate in a presentence investigation related to the guilty findings on counts 3 and 5, and set those counts for sentencing on March 15, 2022.

{¶ 19} At sentencing, the trial court informed appellant, without objection from the state, that his offenses merged for purposes of sentencing and that the state can elect to sentence him for either offense. The state requested that the trial court sentence appellant on the guilty finding for possessing a weapon while under a disability. The trial court then sentenced appellant to a 24-month prison term.[1] The trial court's judgment was memorialized on March 16, 2022.[2]

### B. Assignments of Error

{¶ 20} Appellant timely appealed and asserts the following errors for our review:

1. The trial court abused its discretion when it denied appellant's motion for acquittal pursuant to Crim.R. 29.

2. Faulkner's convictions were not supported by the manifest weight of the evidence.

---

[1] Appellant was serving a term of post-release control at the time of the underlying offenses. The trial court imposed an additional prison term for violating that control by committing the underlying felony. That violation and the sentence imposed are not under review in the present appeal.

[2] On March 22, 2022, the trial court issued a *nunc pro tunc* judgment entry correcting the name of appellant's trial counsel as it was misstated in the original judgment.

8.

## II. Law and Analysis

### A. Issues before the court on appeal.

{¶ 21} Before addressing the merits of this appeal, we find it is necessary to identify the specific issue that is properly before the court. In his brief, appellant asks this court to review the jury's verdicts finding him guilty on both count 3 and 5 of the indictment. This court only has jurisdiction to review final orders. *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 6. In a criminal trial, a final and appealable order must comply with Crim.R. 32(C) by including both the verdict and the sentence imposed. *Id.* Only by complying with Crim.R. 32(C), does a judgment entry constitute a "conviction" that is subject to review by this court. *State v. Whitefield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. Here, the trial court did not impose a sentence related to the guilty verdict on count 3. Instead, the trial court merged count 3 into count 5 for purposes of sentencing. Since no sentence was imposed on count 3, the finding of guilt on that count is not a conviction and any alleged errors in the verdict are not subject to review by this court. *See State v. Haeft,* 6th Dist. Ottawa No. OT-22-011, 2022-Ohio-4304, ¶ 15 (holding that unsentenced guilty finding was not subject to appellate review because it did not constitute a conviction); *State v. Worley,* 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23 (holding that the guilt findings on unsentenced allied offenses are not convictions and therefore not subject to appellate review); *State v. Williams,* 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54; *State v. McKinney,* 10th Dist. Franklin No. 08AP-23, 2008-Ohio-6522, ¶ 39. Therefore, we

9.

limit the scope of our review of appellant's assigned errors to his conviction on count 5 only.

## B. The trial court did not err in denying appellant's Crim.R. 29 motion.

{¶ 22} In his first assignment of error, appellant argues that the state did not introduce sufficient evidence to support his conviction. At trial, appellant offered no specific bases for his Crim.R. 29 motion. Here, appellant specifies that the lack of video evidence of his arrest, coupled with Detective Miller's allegedly "faulty" memory, showed that the state failed to introduce sufficient evidence to support his conviction. We disagree.

{¶ 23} "The standard of review for a denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency of the evidence." *State v. Johnson,* 6th Dist. Wood Nos. WD-13-008, WD-13-009, 2014-Ohio-2435, ¶ 11. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, we do not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

10.

**{¶ 24}** R.C. 2923.13(A)(2) prohibits an individual from knowingly acquiring, having, carrying, or using any firearm or dangerous ordinance if "the person is under indictment of or has been convicted of any felony offense of violence[.]" At trial, appellant stipulated that he had previously been convicted of a felony offense of violence that prohibited his possession of a firearm. Therefore, the only issue to be resolved at trial was whether appellant had indeed been in possession of a firearm at the time of his arrest.

**{¶ 25}** At trial, Detective Miller testified that during appellant's arrest, his partner searched appellant and discovered the firearm in appellant's waistband. Detective Miller then observed his partner removing the firearm from appellant's waistband before it was placed into an evidence bag. He and his partner then created an evidence tag for the firearm. Viewing this evidence in a light most favorable to the state, we find that Detective Miller's testimony is sufficient to show that appellant was in possession of a firearm at the time of his arrest.

**{¶ 26}** To avoid this result, appellant argues that the lack of video evidence, along with Detective Miller's testimony that he did not observe all aspects of the search, was insufficient to support his conviction. Specifically, appellant argues that "without any video footage, the fundamental fact of possession of a firearm is now disputed[.]" Further, he argues that Detective Miller's inability to recall the specific location on appellant's person that Officer Janowiecki discovered the cocaine and scale calls into question his entire recollection of the incident. As a result, he argues, Detective Miller's

11.

testimony, "without corroborating video, was insufficient to sustain a conviction[.]" Appellant's argument is without merit.

{¶ 27} First, we reject appellant's argument that the lack of video evidence impacts our analysis as to whether the state's evidence was insufficient. Whether video evidence could have corroborated or disputed Detective Miller's testimony goes to the weight of Detective Miller's testimony, not the sufficiency of the evidence presented. *State v. Halfhill,* 4th Dist. Gallia No. 21CA4, 2022-Ohio-3242, ¶ 28, citing *Cleveland v. Watson,* 8th Dist. Cuyahoga No. 108746, 2020-Ohio-3284, ¶ 37 ("[C]orroboration * * * goes to credibility, which is a matter for manifest weight of the evidence, not sufficiency."); *See also State v. Greer,* 6th Dist. Lucas No. L-21-1153, 2022-Ohio-3082, ¶ 38 (holding that lack of corroboration for co-defendant's testimony attacked co-defendant's credibility, not the sufficiency of the state's evidence). Further, when analyzing sufficiency of the evidence, we address the evidence that the state presented. *State v. Herrera,* 2022-Ohio-4769, -- N.E.3d --, ¶ 33 (6th Dist.). The absence of a specific type of evidence does not negate the sufficiency of the evidence that the state did present. *Id.*

{¶ 28} Second, appellant's argument suggesting Detective Miller's testimony was "faulty" mischaracterizes that testimony. Specifically, appellant states that Detective Miller testified that he "did not watch the search." To the contrary, Detective Miller testified that he observed the search while also continuing to watch the remaining individuals to ensure that he and Officer Janowiecki remained safe. Further, he explicitly

12.

testified that he saw the portion of Officer Janowiecki's search in which the firearm was removed from appellant's waistband. Appellant's suggestion that Detective Miller's observations were so completely detached from the search that his testimony was unreliable in its entirety is not supported by the record.

{¶ 29} In sum, the parties stipulated that appellant had a prior violent felony conviction that prohibited appellant from possessing a firearm. Detective Miller testified that he saw appellant in possession of a firearm. When viewing this evidence in a light most favorable to the prosecution, we find that any rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d 668 (1997). As a result, the trial court did not err in denying appellant's Crim.R. 29 motion and we find his first assignment of error not well-taken.

## C. Appellant's conviction was not against the manifest weight of the evidence.

{¶ 30} In his second assignment of error, appellant argues that the lack of video evidence and Detective Miller's inability to recall Officer Janowieckis' discovery of cocaine and a scale during the search shows that his conviction was against the manifest weight of the evidence. "When examining whether a conviction was contrary to the manifest weight of the evidence, the appellate court serves as a 'thirteenth juror' to conclude whether the trial court lost its way so significantly as to result in a manifest miscarriage of justice, necessitating that the conviction be overturned." *State v. Butler*, 6th Dist. Lucas No. L-08-1390, 2010-Ohio-178, ¶ 11. We note that questions regarding

13.

the "weight and credibility of evidence are primarily for the trier of fact." *State v. Teal*, 6th Dist. Lucas Nos. L-15-1280 and L-15-1281, 2017-Ohio-7202, ¶ 58, citing *State v. Pena,* 6th Dist. Lucas No. L-12-1309, 2014-Ohio-423, ¶ 22. This court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 31} Appellant's possession of a firearm was the only issue in dispute at trial. The record shows that Detective Miller observed appellant in possession of the firearm at the time it was removed from his waistband. We cannot say that the lack of video evidence renders Detective Miller's testimony on this issue any less credible, certainly not to the extent that the lack of video weighs heavily against appellant's conviction. Moreover, because appellant was not convicted of any drug-related offenses, it is unclear how Detective Miller's inability to specifically recall seeing appellant in possession of cocaine or a scale renders his conviction for having a weapon while under a disability to be against the manifest weight of the evidence. Put simply, this is not an "exceptional case" that warrants reversal.

{¶ 32} For these reasons, we find that the jury's verdict was not against the manifest weight of the evidence. Therefore, we find appellant's second assignment of error not well-taken.

### III. Conclusion

**{¶ 33}** We find appellant's first and second assignments of error not well-taken.

We affirm the March 16, 2022 judgment of the Lucas County Court of Common Pleas.

Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.             _____
                                                    JUDGE

Gene A. Zmuda, J.            

                                  _____
Myron C. Duhart, P.J.                                     JUDGE
CONCUR.

                                  _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.